IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER MEALS,** On Behalf of Himself and All Others Similarly Situated | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:16-cv-01674-NBF |
| **KEANE FRAC GP, LLC;** **KEANE FRAC, LP; and** **KEANE GROUP HOLDINGS, LLC,** | § § § § | |
| Defendants. | § § | |

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR FLSA CONDITIONAL CERTIFICATION AND SUPPORTING MEMORANDUM**

---

Defendants Keane Frac GP, LLC, Keane Frac, LP, and Keane Group Holdings, LLC (*collectively* "Defendants") submit this Response to Plaintiff's Motion for FLSA Conditional Certification and Supporting Memorandum (Dkt 29), and in support respectfully show the following:

## I.      INTRODUCTION

This case involves a proposed collective action under the Fair Labor Standards Act ("FLSA") alleging that Defendants failed to properly calculate and pay overtime to Keane's FRAC Supervisor Is ("Supervisor Is"). Defendant seeks conditional certification for every "Supervisor I who works in Defendants' fracking division." (Dkt. 29 at 2). This proposed class spans employees in four states nationwide. This case is not proper for a collective action.

In support of his request for conditional certification, Plaintiff relies on "uniform Supervisor I job postings (Dkt. 29 at 2) which he argues "establish" that all Supervisor Is

performed the same job duties. Similarly, he relies on his allegation that Supervisor Is are misclassified as exempt. As shown below, however, neither is evidence of ***an employer's policy*** as required for the conditional certification.

Plaintiff's only other evidence in support of his request for conditional certification are the boilerplate sworn statements from the Named Plaintiff and the only two opt-ins.[1] These do not suffice because they contain impermissible conclusory allegations and inadmissible hearsay.[2] Moreover, these three former employees each held different positions during their employment with Defendants. Although they claim to have worked in various locations "during their employment" with Defendants, they fail to specify which locations they worked ***as Supervisor Is.*** Accordingly, it is impossible to discern the nationwide locations of which they could argue they are representative and/or have evidence of others. Finally, Plaintiff fails to present any evidence that other individuals desire to opt in to this case. As such, Plaintiff's "evidence" does not rise to even the low threshold of a "modest factual showing" that a policy of Defendants' affected Plaintiff in the same manner as it affected all other members of the proposed class.

For these reasons, Defendants respectfully requests that the Court decline to grant conditional certification in this case.

---

[1] Plaintiff also includes a sworn statement from a former manager who never worked as a Supervisor I. Therefore, none of his affidavit is based on personal knowledge and should be stricken.
[2] Defendants file their "Motion to Strike Affidavits in Support of Conditional Certification" consecutively with this Response.

# II.     FACTUAL BACKGROUND

**A.     Keane's Business Operations**.

Keane is an oil and gas services company with a primary focus of providing completions services (hyrdraulic fracturing, wireline, etc.) to operators. Such services involve sending tools and materials into existing well-holes by means of specially-designed equipment and a large number of onsite personnel. A Keane frac crew consists of approximately 40 crew members. At any given time, there are about 12 to 14 crew members on the site, working around the clock. In addition to those crewmen, each shift has one Frac Supervisor I, who is responsible, among other things, for the safety of the entire crew and site. Keane accomplishes its success through an unwavering focus on health, safety and the environment.

**B.     The Executive Exemption Facts**

The Fair Labor Standards Act ("FLSA") states, in relevant part, the following:

> Except as otherwise provided in this section, employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C.A. § 207. Certain exemptions apply to the federal requirement for overtime payment.

The Executive Exemption applies to employees if:

    (1)    they are compensated on a salary basis;

    (2)    their primary duty is management;

    (3)    they customarily and regularly direct the work of two or more other employees; and

    (4)    they have the authority to hire or fire other employees or their suggestions and recommendations on personnel decisions are given particular weight.

*See* 29 C.F.R. § 541.100(a)(1)-(4). For the purposes of determining whether an employee's primary duty is management, "management" includes, but is not limited to the following: hiring and firing employees; directing the work of employees; appraising employees' productivity and efficiently for purposes of recommending promotions or other changes in status; disciplining employees; planning the work; determining the techniques to be used; determining the type of materials, supplies, machinery, equipment or tools to be used; and providing for the safety and security of the employees or the property. *See* 29 C.F.R. § 541.102; *see also* U.S. DOL WAGE AND HOUR DIVISION, FACT SHEET #17B: Exemption for Executive Employees Under the Fair Labor Standards Act (FLSA).

## III.     ARGUMENTS AND AUTHORITIES

The FLSA permits employees to pursue an action for unpaid wages on behalf of themselves and other similarly situated employees. 28 U.S.C. § 216(b). The FLSA does not define the term "similarly situated." Similarly, the United States Supreme Court has not provided direct guidance on the meaning of the term "similarly situated." *Bishop v. AT & T Corp.*, 256 F.R.D. 503, 506 (W.D. Pa. 2009). Like most circuits, the Third Circuit has adopted a commonly used two-step analysis to determine whether plaintiffs are similarly situated: the initial notice stage, or conditional certification, and the final certification.[3] *Id.*

At the first stage, for conditional certification, the Plaintiff must make a "modest factual showing" that "similarly situated employees were injured as a result of a single decision, policy or plan before the proposed class can be conditionally certified." *Dunkel v. Warrior Energy Servs., Inc*., 304 F.R.D. 199, 200 (W.D. Pa. 2014) (citing *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189, 195 (3d Cir. 2011). This standard requires Plaintiff to make a "modest factual

---

[3] Because this case is at the first stage, this Response does not discuss the second stage in depth.

showing" by "produc[ing] some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Dunkel*, 304 F.R.D. at 199 (citing *Symczyk*, 656 F.3d at 195). Accordingly, a plaintiff must show (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way. *See Dunkel*, 304 F.R.D. at 200.

Although the standard at the conditional certification stage is relatively lenient, courts recognize and do not hesitate to decline conditional certification where a plaintiff has not made the proper showing. "Certification at the notice stage, although governed by a lenient standard, is not automatic." *Moore v. PNC Bank, N.A.*, No. 2:12-CV-1135, 2013 WL 2338251, at *5 (W.D. Pa. May 29, 2013) (citing *Harriel v. Wal–Mart Stores, Inc.*, CIV.A. 11–2510 MLC, 2012 WL 2878078, at *4 (D.N.J. July 13, 2012)); *see also Bramble v. Wal-Mart Stores, Inc.*, No. CIV. A. 09-4932, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011) (providing that "[t]he right to proceed collectively may be foreclosed where an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice"); *see also Schwartz v. Victory Sec. Agency, L.P.*, No. 2:11-CV-0489, 2012 WL 4506566, at *2 n. 5 (W.D. Pa. Sept. 28, 2012) ("Even under the 'modest factual showing' standard, the movant must produce some evidence of a factual nexus between the manner in which the alleged policy affected the movant and the manner in which it affected other employees."); *Holley v. Erickson Living*, No. CIV.A. 11-2444, 2012 WL 1835738, at *3 (E.D. Pa. May 21, 2012) (finding plaintiff failed to make a modest factual showing).

**A.    Plaintiff's misclassification claim and allegation that he spent most of his time performing "non-managerial duties" does not constitute a "modest factual showing."**

A plaintiff cannot meet his burden for conditional certification by claiming he spent most of his time performing non-managerial duties. Courts reject this argument because such claims are evidence of an *individual's own conduct*, not an *employer's policy*.

> The fact that Plaintiff alone claims he spent most of his time performing non-managerial tasks, combined with the evidence showing that the OAM position is subject to nationwide standards under Defendant's corporate policies, does not require the Court to infer that a significant number of other OAMs would have also deviated from the written job description to spend most of their time performing non-managerial tasks.

*Moore v. PNC Bank, N.A.*, No. 2:12-CV-1135, 2013 WL 2338251, at *5 (W.D. Pa. May 29, 2013) (citing *Harriel v. Wal-Mart Stores, Inc.*, No. CIV.A. 11-2510 MLC, 2012 WL 2878078, at *5 (D.N.J. July 13, 2012)). Similarly, the Eastern District of Pennsylvania has noted:

> Plaintiffs do not point to a job description that says that APCs are required to perform non-exempt tasks for a majority of their working hours. 'Instead, the Plaintiffs are arguing that as a matter of fact, rather than of formal job description, they are performing non-[exempt] duties for the majority of their working hours.'

*Bramble v. Wal-Mart Stores, Inc.*, No. CIV.A.09-4932, 2011 WL 1389510, at *5 (E.D. Pa. Apr. 12, 2011) (quoting *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004)); *see also Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 476 (S.D.N.Y. 2010) (denying plaintiff's motion for conditional certification where plaintiff's claim that he spent most of his time performing non-exempt managerial tasks was "very different from an attack on a common formal policy"). Indeed, the following often-cited excerpt from the *Guillen* court explains this reasoning well, noting that such evidence merely:

> boil[ed] down to the proposition that where there is a corporate management structure that applies to all regions of the country—as is likely true for many, if not most companies that operate nationally—any single employee may plausibly

assert that employees are similarly situated with respect to that employee's day to day job requirements even if those job activities contravene the company's stated requirements.

*Bramble*, 2011 WL 1389510, at \*5–6 (E.D. Pa. Apr. 12, 2011) (quoting *Guillen*, 2010 WL 4627851, at \*6–7)).

Likewise, an allegation that a class of employees are misclassified as exempt does not constitute a "modest factual showing" for conditional certification. "The mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Bramble*, 2011 WL 1389510, at \*4 (E.D. Pa. Apr. 12, 2011) (quoting *Colson v. Avnet, Inc.,* 687 F.Supp.2d 914, 927 (D. Ariz. 2010)). Such a rule would mean **every** group of exempt employees who alleged misclassification would have their claims conditionally certified. Indeed, courts have "readily exercised discretion and denied conditional certification motions when plaintiffs have relied on a common exemption status as the factor that binds a putative class together. *See Moore v. PNC Bank, N.A.*, No. 2:12-CV-1135, 2013 WL 2338251, at \*5 (W.D. Pa. May 29, 2013) (citing *Guillen v. Marshalls of MA, Inc.,* 841 F. Supp.2d 797, 801 (S.D.N.Y. 2012), *adopted by,* 09 CIV. 9575 LAP GWG, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) ("Obviously, his pointing to a common policy at Marshalls regarding the job duties of ASMs provides no proof that other ASMs are performing non-exempt duties, particularly given that all policies and writings from Marshalls dictate just the opposite"); *see also Jenkins v. TJX Companies Inc.,* 853 F. Supp.2d 317, 323 (E.D.N.Y. 2012) ("As numerous courts in [the Second] Circuit have held, the mere classification of a group of employees—even a large or nationwide group as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or

practice that renders all putative class members as 'similarly situated' for § 216(b) purposes.") (citations omitted).

Plaintiff contends that the "uniform" job postings for Supervisor Is "establish" that the Supervisor I position has the same job duties company-wide. Dkt. 29 at ¶ 10. Plaintiffs' reliance on the Supervisor I job posting is misguided for several reasons. First, as discussed, a claim for misclassification cannot constitute an employer's **policy** for conditional certification, because this would result in automatic conditional certification for all misclassification cases. Yet, conditional certification is not automatic. *See Moore v. PNC Bank, N.A.*, No. 2:12-CV-1135, 2013 WL 2338251, at *5 (W.D. Pa. May 29, 2013). Second, even if a misclassification claim could be the basis for conditional certification, job descriptions are not determinative of whether employees are misclassified. "For the same reasons that job titles are not determinative, job descriptions are not determinative. The relevant inquiry focuses upon the content of the position." *Wildi v. Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640, 659–60 (W.D. Pa. 2009); *see also Heller v. Elizabeth Forward Sch. Dist.,* 182 Fed. App'x. 91, 95 (3d Cir. 2006) ("[W]hen a court assesses the substantial equality between jobs, it should rely on actual job performance and content rather than job descriptions."). Accordingly, Plaintiff erroneously directs the Court to the absence of certain language from the Supervisor I job postings, stressing that the job postings "do **NOT** provide that management is the primary duty of the job" (Dkt. 29 at ¶ 12 ) (emphasis in original). The absence of rote language in a job description has no bearing whatsoever on whether the job is exempt or whether an employer's policy affected Plaintiff in a similar manner as it affected the proposed class members.  As such, this does not constitute a "modest factual showing." Similarly, Plaintiff also emphasizes the fact that Supervisor I job postings "do **NOT**" track the language of the Executive Exemption by listing duties such as "hiring or firing of

employees," "disciplining employees," or "recommending the change of status of any employee." (Dkt. 29 at ¶ 13) (emphasis in original). As discussed, this, too, falls short of even the low threshold for conditional certification. The inclusion or exclusion of statutory language in a job description is never determinative of misclassification; here, it is likewise no evidence that Plaintiff and the proposed class members are similarly situated. Thus, Supervisor Is merely sharing a job description does not constitute a "modest factual showing" for conditional certification.

Ironically, however, the Supervisor I job posting that Plaintiff so heavily relies on actually undermines Plaintiff's contention that a Supervisor's primary duty is not management:

Duties/Responsibilities:

- Supervise the day to day field operations of the Fracturing operations on location;
- Supervise all aspects of field applied services;
- Work with all operations groups to ensure trouble free operations;
- Ensure adherence to operational policy, safety policy and procedures;
- Document and report all pertinent crew, equipment and job related information;
- Provide direction, training and on-going leadership to crew team members;
- Responsible for making safety performance and environmental awareness the primary focus of all Frac employees;
- Ensure equipment operators are performing their assigned duties correctly, safely and in accordance with Keane Frac Standards;
- Train personnel as needed.

Dkt. 29, Exs. 7-8.

Skills and Experience Requires:

- Requires strong leadership and supervisory skills;
- Ability to communicate and comprehend the efforts of others;
- Five (5) or more years Fracturing/Stimulation experience in service company or oilfield operating company.

Dkt. 29 Exs. 7-8. Rather than address the obvious supervisory duties and responsibilities listed in the job positing, Plaintiff instead draws the Court's attention to the "Physical and Working

Conditions" section of the job posting. Dkt. 29 at ¶ 12. This, too, is not a "modest factual showing." This list, which includes "frequent climbing, lifting, bending, twisting, and standing" and "[e]xposure to working outdoors in all-weather conditions," (Dkt. 29 at ¶ 12; Dkt. 29 Exs. 7-8) merely establishes Supervisor Is are supervising employees in the field. It is axiomatic that supervisors need to be in the field to supervise equipment operators and other crewmembers. It would be impossible for Supervisors Is to perform their managerial duties, including "supervis[ing] the day to day field operations" and "ensuring equipment operators are performing their assigned duties correctly, safely, and in accordance with Keane Frac Standards" (Dkt. 29 Exs. 7-8) from anywhere but the field.

As such, Plaintiff fails to meet his burden for conditional certification by relying on merely uniform job postings and his claim that his primary duty is not management.

**B.** **The Sworn Statements by Meals, Slater, and Walker Fall Short of a "Modest Factual Showing" for Conditional Certification because they rely on their own conduct and hearsay, not Defendants' policy.[4]**

An affidavit in support of a conditional certification must be based on personal knowledge, not conclusory allegations or hearsay. "Only admissible evidence may be considered in deciding a motion for conditional class certification under 29 U.S.C. § 216(b) of the FLSA." *Hall v. Guardsmark, LLC*, No. CIV.A. 11-213, 2012 WL 3580086, at *11 (W.D. Pa. Aug. 17, 2012) (citing *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, 2009 WL 1515175, at *3 (W.D.Pa. June 1, 2009) (Ambrose, C.J.)). An affidavit based on hearsay therefore fails to meet the "modest factual showing" standard.

> [H]earsay should not be accepted in support of affidavits from the named
> plaintiffs for class certification. To permit the named plaintiffs to obtain
> conditional certification by attesting to policies applied to them and then stating
> that they "believe" other employees were subjected to the same policies would in

---

[4] This section of Defendant's Response will be filed as a Motion to Strike Sworn Statements in Support of FLSA Conditional Certification.

effect result in automatic preliminary certification, which is at odds with the
modest factual showing standard approved of by the Court of Appeals in *Symczyk.*

*Hall v. Guardsmark, LLC*, No. CIV.A. 11-213, 2012 WL 3580086, at *11 (W.D. Pa. Aug. 17,

2012) (internal citation omitted) (citing *Smith v. Sovereign Bancorp. Inc.,* 2003 WL 22701017, at

*2–3 (E.D.Pa. Nov.13, 2003)). *Bramble v. Wal-Mart Stores, Inc.*, No. CIV.A.09-4932, 2011 WL

1389510, at *5 (E.D. Pa. Apr. 12, 2011)). Additionally, merely anecdotal evidence about job

duties that requires generalization to the proposed class does not suffice. *See Holt,* 333 F.

Supp.2d at 1272; *see also Kronick v. bebe Stores, Inc.*, No. CIV. 07-4514 (RBK), 2008 WL

4546368, at *3 (D.N.J. Oct. 2, 2008) (denying motion for conditional certification where

"[p]laintiffs assert generalized assumptions and effectively assume a similar situation for

themselves and the prospective class.").

Here, Plaintiff's sworn statements do not suffice to establish a "modest factual showing."

Most glaringly, the sworn statement from Brian Cales is not based on personal knowledge

because he never worked as a Supervisor I for Defendants. For example, Mr. Cales' sworn

statement contains numerous conclusory statements lacking any details or context:

> Supervisor Is almost always worked more than forty (40) hours per week, but
> Defendants did not pay them overtime. I know this personally because I worked
> with and managed multiple Supervisor Is during my employment with
> Defendants.

Mr. Cales fails to specify how many Supervisor Is he managed and at which locations,  and why

managing them gave him "personal knowledge" of the number of hours Supervisor Is "always"

worked and that Defendants did not pay them overtime. The Court does not have to infer that

Mr. Cales had access to these unspecified Supervisor's payroll data.

> 'The fact that Plaintiff alone claims he spent most of his time performing non-
> managerial tasks, combined with the evidence showing that the OAM position is
> subject to nationwide standards under Defendant's corporate policies, does not
> require the Court to infer that a significant number of other OAMs would have

also deviated from the written job description to spend most of their time performing non-managerial tasks.'

*Moore v. PNC Bank, N.A.*, No. 2:12-CV-1135, 2013 WL 2338251, at *5 (W.D. Pa. May 29, 2013) (quoting *Harriel v. Wal-Mart Stores, Inc.*, No. CIV.A. 11-2510 MLC, 2012 WL 2878078, at *5 (D.N.J. July 13, 2012)). Rather, the Court can infer that Mr. Cales' "personal knowledge," is, in fact, based on hearsay, or even hearsay within hearsay: conversations he had with Supervisor Is, or conversations he had with other employees *about* Supervisor Is.

Similarly, Mr. Cales makes the following generalized statement that simply cannot be extrapolated to apply to Supervisor Is nationwide:

> Supervisor Is did not hire or fire employees, recommend the hiring or firing of employees, promote or demote employees, set employee pay or benefits, or set any budget. I performed these functions as a Field Service Manager. I was onsite daily. This was standard company policy for Defendants."

Dkt.29-6 at ¶ 8. As discussed, one employee's diversion from assigned job duties does not require the inference that a significant (nationwide) number of employees would make or did make the same diversion. In other words, Mr. Cales states that it was Mr. Cales who personally hired and fired employees, promoted or demoted employees, set employee pay or benefits, and set a budget. This does not mean that Supervisor Is are not supposed to be involved in this process. Rather, it suggests that Mr. Cales, as the boss of an unspecified number and location of Supervisor Is, did not allow those Supervisor Is to participate in those duties.

As the *Moore* court explained, the combination of a claim that an employee's primary duty was not management and a nationwide job description do not suffice to establish a "modest factual showing." Here, Mr. Cales' conclusively asserts that Supervisor Is spent "virtually all their work time performing non-managerial tasks..." Plaintiff seeks to use Mr. Cales' statement in combination with his "evidence" of a nationwide job description. This is precisely what does

not suffice. *Moore v. PNC Bank, N.A.*, No. 2:12-CV-1135, 2013 WL 2338251, at *5 (W.D. Pa. May 29, 2013) (citing *Harriel v. Wal-Mart Stores, Inc.*, No. CIV.A. 11-2510 MLC, 2012 WL 2878078, at *5 (D.N.J. July 13, 2012)). Accordingly, Mr. Cales' sworn statement is no evidence whatsoever toward Plaintiff's burden.

Second, the remaining sworn statements constitute nearly identical boilerplate conclusions by the Named Plaintiff, Christopher Meals, and the two opt-ins, Daniel Slater, and Dusty Walker. These statements are far too conclusory, vague, and general to constitute evidence sufficient for a nationwide conditional certification. As a preliminary matter, it is unclear from the Sworn Statements which of the numerous Keane locations the Plaintiffs worked as Supervisor Is:

> I first worked as a Senior Equipment Operator II…[T]hen I worked for Defendants as a Treater in Training…I then worked as a Supervisor I…I worked at <u>many different locations</u> during my employment with Defendants.

Dkt. 29, Ex. 3 at ¶ ¶ 2-3 (Sworn Statement by Christopher Meals).

> I first worked for Defendants as an Equipment Operator. I then worked as a Supervisor I for Defendants…I subsequently worked for Defendants as a Supervisor II…I worked at many different locations during my employment with Defendants.

Dkt. 29, Ex. 4 at ¶¶ 2-3 (Sworn Statement by Daniel Slater).

> I first worked as a [sic] Equipment Operator III for Defendants…I subsequently worked as a Supervisor I for Defendants…I worked at locations throughout Texas during my employment with Defendants. I worked at multiple locations in northern and western Texas including the Midland area.

Dkt. 29, Ex. 5 at ¶¶ 2-3 (Sworn Statement by Dusty Walker). As such, Plaintiff has not presented evidence of the locations of which he and the opt-ins would be representative. Moreover, the sworn statements all  make the following general conclusions lacking any details or context:

> I worked with numerous Supervisor Is such that I personally observed their work duties on a daily basis. At ¶ 2.

> I personally observed other Supervisor Is perform these same job duties at these different locations. At ¶ 3.

Observing unspecified Supervisors is not a basis for a "modest factual showing." As a practical matter, many of the managerial duties listed in the job positing may not be overtly noticeable. For example, Supervisor Is must "[s]upervise the day to day field operations of the Fracturing operations on location" and ensure adherence to operational policy, safety policy and procedures." (Dkt. 29 at Exs. 7-8). Plaintiffs Meals, Slater, and Walker would not be able to tell whether the Supervisor Is were observing the crew and ensuring safety protocol was followed. They do not allege that safety protocols were being broken by this alleged deviation of responsibility. They provide no specific examples, no names, no locations, and no basis for their knowledge. Indeed, the statements are so vague they cannot constitute a "modest factual showing" for conditional certification.

Moreover, as discussed above, claiming a plaintiff's primary duties were not managerial - a mere statement about one's own conduct – is not proof of a policy of Defendants. Yet, this is the nexus of Plaintiff's "evidence:"

> My primary duty as a Supervisor I and the primary duty of other Supervisor Is is not management. I worked alongside other hourly employees and spent virtually all of my work time performing non-management tasks which included the same manual labor tasks they did which [sic] such as working on the hydraulic fracking pumps, rigging up and down, and other such manual labor tasks.
>
> As a supervisor I, I did not hire or fire employees, recommend the hiring or firing of employees, promote or demote employees, set employee pay or benefits, or set any budget.

Dkt. 29, Ex. 3 at ¶ 8; 9 (Sworn Statement by Christopher Meals); Ex. 4 at ¶ 8; 9 (Sworn Statement by Daniel Slater); Ex. 5 at ¶ 8; 9 (Sworn Statement by Dusty Walker). These sworn statements merely establish that Plaintiffs Meals, Slater, and Walker deviated from their assigned

supervisory duties and responsibilities. The Court is, therefore, not required to make a generalization that all Supervisor Is nationwide similarly deviated from their supervisory job duties and responsibilities.

Finally, Plaintiff relies on his allegation of misclassification in attempting to make a "modest factual showing."

> I worked in excess of forty (40) hours per workweek during my Supervisor I employment with Defendants. Defendants did not pay me overtime compensation for my hours worked in excess of forty (40) hours per week as a Supervisor I.

> I personally observed other Supervisor I employees who worked over 40 hours per week at different locations and to whom Defendants did not pay overtime.

> Defendants hired myself and other Supervisor Is as exempt employees who are not entitled to overtime compensation.

Dkt. 29, Ex. 3 at ¶¶ 4-6 (Sworn Statement of Christopher Meals); Ex. 4 at ¶¶ 4-6 (Sworn Statement by Daniel Slater); Ex. 5 at ¶¶ 4-6 (Sworn Statement by Dusty Walker). As previously discussed, however, a claim of misclassification does not suffice because any plaintiff asserting such a claim would automatically be granted conditional certification. *See Bramble,* 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011). Accordingly, these statement, too, fail to make a "modest factual showing."

Finally, as with the sworn statements in *Hall*, Plaintiff's sworn statements "simply attest[] to policies applied to them and then stat[e] that they 'believe' other employees were subjected to the same policies…" *Hall v. Guardsmark, LLC*, 2012 WL 3580086, at *11 (W.D. Pa. Aug. 17, 2012) (internal quotation omitted).

> To my knowledge, all Defendants paid Supervisor Is pursuant to the same basic compensation plan which paid Supervisor Is a salary and bonus.

> I understand that the other Supervisor Is had the same/similar compensation plan as I did which paid a salary plus a bonus, performed the same job duties I did, Defendants did not pay them overtime.

Dkt. 29, Ex. 3 at ¶¶ 7;11 (Sworn Statement of Christopher Meals); Ex. 4 at ¶¶ 7;11 (Sworn Statement by Daniel Slater); Ex. 5 at ¶¶ 4; 7;11 (Sworn Statement by Dusty Walker).

Accordingly, Plaintiff's sworn statements do not constitute evidence because they are conclusory, vague, general, and are based on inadmissible hearsay. These statements, therefore, do not constitute some evidence "beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees." *Dunkel*, 304 F.R.D. at 199 (citing *Symczyk*, 656 F.3d at 195).

**C.    Plaintiff Has Made No Showing That Any Similarly Situated Employees Desire to Opt In.**

Many courts require a plaintiff to show that at least some similarly situated individuals desire to opt in to the lawsuit before granting conditional certification. *See, e.g., Dybach v. State of Fla. Dept. of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir.1991); *Simmons v. T-Mobile USA, Inc.,* No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007); *Parker v. Rowland Express, Inc.,* 492 F. Supp.2d 1159, 1165 (D. Minn. 2007); *King v. West Corp.,* No. 8:04-cv-318, 2006 WL 118577, at * 12 (D. Neb. Jan. 13, 2006); *Lance v. The Scotts Co.,* No. 04-5270, 2005 WL 1785315, at *9 (N.D. Ill. July 21, 2005); *Mackenzie v. Kindred Hosps. E., L.L.C.,* 276 F. Supp.2d 1211, 1220-21 (M.D. Fla. 2003); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 361-62 (M.D. Ala. 1999); *Hargrove v. Sykes Enters., Inc.,* No. Civ. 99-110, 1999 WL 1279651, at *4 (D. Or. June 30, 1999); *Cash v. Conn Appliances, Inc.,* 2 F. Supp.2d 884, 897 (E.D. Tex. 1997); *Detho v. Bilal,* No. CIV.A. H-07-2160, 2008 WL 2962821, at *3 (S.D. Tex. July 29, 2008); *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify notice.) (citing *Haynes v. Singer Co., Inc.,* 696 F.2d 884, 887 (11th Cir.1983). *See also Bond v.*

*Nat'l City Bank of Pennsylvania*, No. 05-CV-0681, 2006 WL 1744474, at *6 (W.D. Pa. June 22, 2006) (citing *Dybach v. Florida, Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir.1991) ("Before determining to exercise [its] power [to approve notice to potential plaintiffs], the district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated' ...."); *Wright v. Lehigh Valley Hosp.*, No. CIV.A 10-431, 2010 WL 3363992, at *4 (E.D. Pa. Aug. 24, 2010).

> [B]efore a conditional-certification motion may be granted, a named plaintiff (or plaintiffs) must proffer some evidence that other similarly situated individuals desire to opt in to the litigation. In the absence of such evidence, there would be no basis upon which the Court could conclude that the action was an "appropriate case" for collective-action treatment.

*Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164–65 (D. Minn. 2007). This showing is justified by the considerable expense a conditional certification creates for defendants. "Others' interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants in a collective action." *Simmons v. T-Mobile USA, Inc.*, No. CIV A H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007).

There is no bright line test for whether an employee has satisfactorily shown other similarly situated employees desire to join the litigation. *See, e.g., H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (explaining that "whether affidavits of potential plaintiffs were submitted" is one of several factors that courts *may* consider). However, it is clear that showing the mere existence of similarly situated individuals is not enough.

> [A] plaintiff must do more than show the *mere existence* of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit…[I]f an FLSA plaintiff were required to show only that other potential plaintiffs exist (rather than showing that those potential plaintiffs would actually seek to join the lawsuit), it would render preliminary class certification automatic, as long as the Complaint contains the magic words:

"Other employees similarly situated." Under this rationale, any plaintiff who is denied overtime pay may file suit under [the] FLSA and, as long as her complaint is well-pled, receive preliminary class certification and send court-approved notice forms to every ... employee[ ]. This is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant.... More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to "ascertain the contours of the [§ 216] action at the outset."

*Detho v. Bilal*, No. CIV.A. H-07-2160, 2008 WL 2962821, at *2 (S.D. Tex. July 29, 2008) (quoting *Parker,* 92 F. Supp.2d at 1165; quoting *Smith v. Sovereign Bancorp, Inc.,* No. Civ. A. 03-2420, 2003 WL 22701017, at *2 (E.D.Pa. Nov.13, 2003) (internal quotations omitted). An example from the Eastern District of Pennsylvania where a showing was sufficient is instructive. The court found this showing was made where a plaintiff presented, among other documentary evidence, responses to interrogatories and requests for production that reflected that not a single employee received overtime wages, and that the employer maintained no records or policies reflecting how or why they classif[ied] their employees as exempt. *Harrison v. DelGuerico's Wrecking & Salvage, Inc.*, 305 F.R.D. 85, 89 (E.D. Pa. 2015), *class ultimately decertified*, *Harrison v. Delguerico's Wrecking & Salvage, Inc.*, No. CV 13-5353, 2016 WL 826824, at *3 (E.D. Pa. Mar. 2, 2016);

Here, Plaintiff has presented sworn statements by the Named Plaintiff, the two only opt-in plaintiffs, and a sworn statement from a former manager employee. Although sworn statements are evidence courts may consider when determining whether the plaintiff has shown that other individuals are interested in joining the litigation, Plaintiff's sworn statements are wholly insufficient. As previously discussed, the sworn statements provided by Plaintiff consist of conclusory statements and inadmissible hearsay. Without more, Plaintiff relies on the "magic words" that "other employees similarly situated" have been injured by an employer's policy in a similar manner that Plaintiff has been injured. He presents absolutely no evidence that the three

plaintiffs in total justify a nationwide conditional certification. Plaintiff argues that "this case is not *Moore v. PNC Bank, N.A.*, 2013 WL 233251 (W.D. Pa. May 29, 2013)." Plaintiff characterizes that case "where a plaintiff and one opt-in plaintiff sought to certify a nationwide class of about 2,050 putative class members without supporting evidence." (Dkt. 29 at 13). In fact, the potential class may have been *far* smaller than that. The court explicitly stated "This Court cannot justify ordering and facilitating notice to a nationwide class of plaintiffs possibly numbering in the hundreds or thousands on the basis of such little factual support." *Moore v. PNC Bank, N.A.,* No. 2:12-CV-1135, 2013 WL 2338251, at *6 (W.D. Pa. May 29, 2013). In analyzing the issue of what constitutes a modest factual showing that other similarly situated individuals desire to join the litigation, the court cited to the following cases: *Struck,* 2013 WL 571849, at *1 ("In support of their Motion, Plaintiffs submit fifteen declarations from opt-in plaintiffs who state that they regularly worked over 40 hours per week to meet PNC's production goals in order to avoid repercussions including but not limited to termination, and did not receive overtime compensation."); *Pereira,* 261 F.R.D. at 65 ("The letters, depositions as to hours requirements, internal complaints and hours budgets from stores nationwide support Plaintiff's allegation of a single policy."). *Hodzic v. Fedex Package Sys., Inc.*, No. CV 15-956, 2016 WL 6248078, at *8 (W.D. Pa. Oct. 26, 2016) (limiting the scope of the conditional certification to the evidence presented: Fed-Ex drivers who delivered packages out of one location instead of nationwide.)

Contrary to Plaintiff's contention that his case is different, Plaintiff has failed to make a "modest factual showing" that similarly situated individuals nationwide desire to join this litigation - much like the plaintiffs in *Moore* and *Hodzic*, Accordingly, there is no basis to subject Defendants to the expense and effort of a nationwide conditional certification.

# IV.    CONCLUSION

Plaintiff fails to meet his burden presenting a "modest factual showing" that similarly situated employees were injured as a result of a single decision, policy or plan. Plaintiff's reliance on nationwide job descriptions is misplaced because, even if a claim for misclassification could constitute a "modest factual showing" – which it cannot - job descriptions are not evidence of misclassification. If it were, however, Defendants could point to numerous duties and responsibilities in the job descriptions that would establish the primary duty of Supervisors is management. Moreover, the sworn statements in which Plaintiffs Meals, Slater, and Walker state their primary duty was not management is merely evidence that they deviated from their assigned job duties and requirements, and nothing more. Additionally, these sworn statements are too conclusory and vague to support a nationwide conditional certification. Finally, Plaintiff has failed to establish that other plaintiffs desire to opt in to this litigation. Indeed, Plaintiff has failed to make a "modest factual showing of a factual nexus between the manner in which the Defendants' alleged policy affected Plaintiff Meals, and the manner in which it affected other employees. Accordingly, Defendants respectfully request the Court the decline to grant conditional certification.

DATED: April 17, 2017

Respectfully submitted,

*/s/ Sammy Y. Sugiura*
Sammy Y. Sugiura
PA I.D. No. 209942
BURNS WHITE LLC
48 26th Street
Pittsburgh, PA 15222
Telephone:  (412) 995-3000
Facsimile:  (412) 995-3300
E-mail: sysugiura@burnswhite.com

Carrie B. Hoffman*
Texas Bar No. 00787701
Sandra L. Jonas*
Texas Bar No. 24091631
GARDERE WYNNE SEWELL LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX  75201
Telephone:  (214) 999-4262
Facsimile:  (214) 999-3262
E-mail: choffman@gardere.com
E-mail: sjonas@gardere.com
*pro hac* motions granted

**ATTORNEYS FOR DEFENDANTS**