IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER MEALS,** On Behalf of Himself and All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>**KEANE FRAC GP, LLC;**<br>**KEANE FRAC, LP; and**<br>**KEANE GROUP HOLDINGS, LLC,**<br><br>Defendants. | § § § § § § § § § § § § § § | Civil Action No. 2:16-cv-01674-NBF |

## COLLECTIVE ACTION SETTLEMENT AGREEMENT

This Collective Action Settlement Agreement resolves the matter captioned *Meals v. Keane Frac GP, LLC et al.*, No. 2:16-cv-01674 (W.D. Pa.) and is entered into between the Named Plaintiff Christopher Meals ("Plaintiff"), on the one hand, who represents the individuals who have submitted consent to join forms on or before June 1, 2017 and who agree to participate in the Action, and Defendants Keane Frac GP, LLC, Keane Frac, LP, and Keane Group Holdings, LLC ("Defendants") on the other hand.

## FACTUAL BACKGROUND AND RECITALS

1. Plaintiff filed the Action in the United States District Court for the Western District of Pennsylvania on November 4, 2016.

2. In November and December 2016, and January 2017, Plaintiff and Defendant discussed the Action in depth including Plaintiff's claims and Defendant's defenses. Defendant produced compensation and employment information for Plaintiff and others so that the Parties could more fully discuss and evaluate the claims and defenses. Defendant answered the Complaint on November 30, 2016.

1

3.      On December 14, 2016, the Parties filed a Joint Motion to Continue the Initial Case Management Conference which the Court granted so that the Parties could continue their detailed discussions and further evaluate the extensive data the Parties had exchanged regarding their respective claims and defenses.

4.      Thereafter, the Parties continued to discuss the Action and exchange information about it. This informal discovery process included the Parties conducting the Rule 26(f) Planning Meeting, and discussing ADR and settlement.

5.      On January 24, 2017, the Parties personally attended the Case Management Conference before the Court. The Court subsequently adopted case deadlines and referred the case to mediation. After the CMC, the Parties continued to discuss the case and exchange information regarding their respective claims and defenses.

6.      On March 16, 2017, Plaintiff moved for conditional certification of a nationwide collective action pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA"). Defendant vigorously opposed this Motion. The Court ultimately granted Plaintiff's Motion on June 6, 2017 after extensive full briefing and the Court's denial of Plaintiff's Motion to Strike which the Parties likewise extensively briefed.

7.      The Parties attended a full-day mediation session in Atlanta on June 6, 2017 with Hunter Hughes, a nationally respected mediator in complex wage and hour collective and class action litigation.

8.      During discovery and prior to the mediation, the Parties exchanged voluminous information, data, and documents necessary to fully and fairly evaluate the FLSA Class Members' claims, including employees' dates of employment, weeks worked during the relevant time period, timekeeping, and compensation data.

9.      Plaintiff and his counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in the Action. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the FLSA Class, Plaintiff and his counsel believe that the settlement as provided in this Agreement is in the best interests of the FLSA Class and represents a fair, reasonable, and adequate resolution of the claims in the Action.

10.     Defendant denies and continues to deny all of Plaintiff's allegations in the Action. Defendant enters into this Agreement expressly disavowing any fault, liability, and/or wrongdoing. This Agreement is in compromise of disputed claims between and among the Parties. Nothing in this Agreement shall be construed as an admission by Defendant, or by any of Defendant's current or former employees or agents, of a breach of any duty, obligation, or contract, a violation of any right of Plaintiff or of any other person, or a violation of any federal, state, or local statute, regulation, judicial doctrine, or other law. Defendant specifically disclaims any liability to, any breach of any duty or obligation to, or any unlawful action against Plaintiff or any other person. Defendant also specifically denies any violations of any statute, regulation, judicial doctrine, or other law as alleged in the Action or otherwise.

11.     Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle the Action on the terms and conditions set forth in this Agreement to avoid the burden, expense, inconvenience, and uncertainty of continuing litigation.

## TERMS OF THE AGREEMENT

In consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      **Definitions.** The following terms have the following meanings:

"**Administrator**" means Analytics LLC.

"**Action**" means the above-captioned collective action lawsuit.

"**Agreement**" means this "Collective Action Settlement Agreement."

"**Class Counsel**" means Rowdy Meeks Legal Group LLC

"**FLSA Class Members**" means all individuals who worked as a Frac Supervisor I during the applicable FLSA limitations period and listed in the agreed spreadsheet provided to the Administrator by the Parties.

"**Court**" means the United States District Court for the Western District of Pennsylvania.

"**Defendant**" means Keane Group Holdings, LLC, Keane Frac, LP, and Keane Frac GP, LLP.

"**Defense Counsel**" means Gardere Wynne Sewell LLP.

"**Effective Date**" means the date this Court approves the Settlement and/or dismisses this Lawsuit. This Settlement shall be deemed final and effective immediately upon the Court's entry of an Order dismissing the Lawsuit.

"**FLSA Weeks**" means the number of weeks the FLSA Class Member worked and was not paid any overtime compensation as a Frac Supervisor I for Defendant during the applicable FLSA statute of limitations period for the FLSA Weeks set forth in the Spreadsheet (as defined below).

"**Gross Settlement Amount**" means the amount of $2,100.000.00. This amount will cover the settlement allocations to Plaintiff and FLSA Class Members, attorneys' fees and costs, and the Administrator's costs, such that Defendant's settlement liability shall not exceed the sum of $2,100,000 except for Defendant's share of the required payroll taxes. Defendant shall pay its employer's share of the required payroll taxes in addition to the $2,100,000 amount.

4

"**Approval Date**" means the date the Court enters an Order approving the Settlement and/or dismissing the Action.

"**Net Settlement Amount**" means $2,100,000.00 *minus* any Court-approved service award, *minus* any Court-approved attorney's fees and expenses, and **minus the Administrator's expenses to administer the Lawsuit**.

"**Notice Form**" means the document attached as Exhibit A.

"**Participating FLSA Class Members**" means all FLSA Class Members who cash their settlement checks.

"**Parties**" refers jointly to Plaintiff and Defendant.

"**Plaintiff**" means Christopher Meals.

"**Released Parties**" means Defendant and any of its parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or other persons or entities acting on its behalf.

"**Relevant Time Period**" means the time period during the applicable FLSA statute of limitations which a FLSA Class Member worked and was not paid any overtime as a Frac Supervisor I for Defendant for the FLSA Weeks set forth in the Spreadsheet (as defined below).

"**Settlement**" means the terms and conditions described in this Agreement.

2.    **Settlement Fund and Allocation.**

A.    Settlement Fund Allocation.    Each FLSA Class Member shall be allocated a proportionate share of the Net Settlement Amount (the "FLSA Class Member Fund").

B.    Allocation of the FLSA Class Member Fund

(i)    Each FLSA Class Member shall be allocated the same minimum dollar amount of $1,000 from the FLSA Class Member Fund ("Minimum FLSA Class Member

Allocation") plus their "Individual FLSA Class Member Share" (together, the "Individual FLSA Class Member Allocation").

   (ii) The FLSA Class Member Fund, less the sum of each FLSA Class Member's "Minimum FLSA Class Member Allocation," shall equal the "Net FLSA Class Member Fund."

   (iii) The "Individual FLSA Class Member Share" of the "Net FLSA Class Member Fund" shall be determined using the following formula:

    1. **Calculate Each FLSA Class Member's Points.** For each FLSA Class Member, multiply the Member's average weekly compensation during the Relevant Time Period in weeks he or she was not paid any overtime compensation by the total number of his or her FLSA Weeks worked without payment of overtime compensation during the Relevant Time Period. For each FLSA Class Member who worked in Pennsylvania, multiply the result by 1.25. The result for each FLSA Class Member is the "FLSA Class Member's Points."

    2. **Calculate "Net Share Per Point."** Add up each of the "FLSA Class Member's Points" to determine the "Total FLSA Class Member Points." Divide the Net FLSA Class Member Fund by the "Total FLSA Class Member Points." The result is the "Net Share Per Point."

    3. **Calculate Each FLSA Class Member's Share.** For each FLSA Class Member, multiply the "FLSA Class Member's Points" by the "Net Share Per Point" to determine the "Individual FLSA Class Member Share."

  C. <u>Service Payment to Plaintiff.</u> Named Plaintiff Christopher Meals will receive a service payment in the amount of $15,000.00. This service payment is in recognition of his efforts to pursue the claims raised in this Action on behalf of the FLSA Class Members, including providing information, being available for the full-day mediation, and otherwise assisting Class Counsel with the prosecution of the litigation. The service payment will be made at the same time and in addition to the Individual FLSA Class Member Share payment allocated from the Net Settlement Amount.

  D. <u>Attorneys' Fees and Expenses</u>. Class Counsel will seek (and Defendant will not oppose) Court approval of fees of One-Third of the Gross Settlement Amount or $700,000 as

6

attorney fees and expenses of $9,089.08 which includes Plaintiff's share of the mediation expenses. The Settlement is *not* contingent upon the Court's approval of this amount. Within 10 business days after the Effective Date, the Administrator will wire to Class Counsel an amount equaling any Court-approved fees and expenses. The Administrator will issue Class Counsel one or more IRS Forms 1099 for the attorneys' fees and costs paid under this Agreement. Class Counsel is solely responsible for the payment of any taxes associated with any payment of attorney fees and/or expenses to Class Counsel.

E. <u>Settlement Administration Expenses</u>. The Settlement will be administered by a third-party administrator, Analytics LLC ("Administrator"). Reasonable fees and expenses of the Administrator shall be deducted from the Gross Settlement Amount. The Administrator has agreed to a reasonable "not to exceed" cap of $2,500.00 for all fees and expenses for settlement administration work.

3. **Maximum Gross Settlement Amount.** Defendant's total payment under this Settlement will not under any circumstances exceed $2,100,000.00 except that Defendant shall also be responsible for Defendant's portion of FICA/medicare wage withholdings on the portion of the Net Settlement Amount from which withholdings are made. The Administrator shall notify Defendant of that amount, and Defendant shall remit it to the Administrator who shall properly report and pay those amounts. Defendant will wire this entire $2,100,000.00 amount to the Administrator within 7 business days after the Effective Date but in no event earlier than July 24, 2017. Additionally, the Administrator shall notify Defendant of the amount needed to cover the Defendant's portion of FICA/medicare withholdings which Defendant shall wire to the Administrator within 3 business days from the date Defendant receives such notification.

4. **Condition Precedent.** This Settlement is conditioned on the passage of the Effective Date.

5. **Release.** As of the Effective Date, each Participating FLSA Class Member (on behalf of himself/herself and his/her heirs, spouses, administrators, executors, assigns, and representatives) releases and forever discharges the Released Parties from all legal or equitable overtime claims arising from November 4, 2013 to the Effective Date while the Participating FLSA Class Member worked in the FLSA Workweeks in the Spreadsheet, and either asserted in or reasonably related to the Action, including such overtime claims under the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment & Collection Law, 43 P.S. §§ 260.1, *et seq.*, the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law theory.

6. **Approval Motion.** No later than 3 business days after the execution of this Agreement, Class Counsel will file with the Court an unopposed joint motion seeking, *inter alia*, entry of an order approving the Settlement and dismissing the Action.

7. **Class Notice and Settlement Administration.**

    A. Calculation of Payment Amounts for Each FLSA Class Member. No later than 7 business days after the Effective Date of this Agreement but in no event earlier than July 24, 2017, Defendant will provide to Class Counsel and the Administrator an electronic Excel spreadsheet listing each FLSA Class Member's name, state of employment, last known residential address, the number of FLSA Weeks worked for Defendant while in a Frac Supervisor I job and not paid overtime from the start of the applicable three year statute of limitations through the date of Approval, and the average rate of pay for each FLSA Class Member while in a Frac Supervisor I position while not paid overtime (the "Spreadsheet"). The Parties shall provide the Administrator

8

with all necessary cooperation, including but not limited to the execution of all documents necessary to administer the Settlement. Defendant will provide any other information to Class Counsel and the Administrator necessary to enable it to perform the calculations described in Paragraphs 2(A)-2(B) and to obtain current contact information

   B. <u>Review of Payment Amount Calculations.</u>  Within ten (10) business days of receipt of the Spreadsheet and any other information identified in the previous subparagraph, the Administrator shall calculate the settlement allocations pursuant to the formulas provided in Paragraphs 2(A)-2(B) of this Agreement, and the Administrator shall provide the calculations to Class Counsel and Defendant's Counsel.  Class Counsel and Defense Counsel will review the calculations for accuracy and cooperate in good faith to resolve any calculation errors within no later than ten (10) business days.

   C. <u>Distribution of Settlement Payments</u>.  As soon as practicable and pursuant to the settlement allocations calculated in accordance with the formulas in Paragraphs 2(A)-2(C) of this Agreement, the Administrator shall issue the Settlement Notice, settlement checks to the FLSA Class Members, and the service payment check to Plaintiff.

   The back of each check will contain the following language:

"I understand that, by endorsing this check, I agree to: (A) become a party plaintiff to the federal Fair Labor Standards Act ("FLSA") lawsuit entitled Meals v. Keane Frac GP, LLC, et. al., 2:16-cv-1674-NBF (U.S.D.C. W.D. Pa.), and (B) release any FLSA and/or Pennsylvania Minimum Wage Act overtime claims I may have against Keane Frac GP, LLC, Keane Frac, LP, Keane Group Holdings, LLC or any of its officers, agents, or affiliates in my job as a Frac Supervisor I for the FLSA Workweeks for which my overtime was calculated from November 4, 2013 to [date of settlement approval]."

If any settlement check or replacement settlement check remains uncashed 120 calendar days after issuance, the Administrator will stop payment on the check and revert all associated funds to Keane Group Holdings, LLC. Within 125 calendar days after issuance, the Administrator will provide to Class Counsel and Defense Counsel copies of the back of each check, as endorsed by the recipient, and Class Counsel will promptly file a list of the Participating FLSA Class Members with the Court.

        D.    <u>Undeliverable Settlement Materials.</u>  If materials sent to a FLSA Class Member are returned as undeliverable, the Administrator shall promptly undertake reasonable steps to determine the FLSA Class Member's current address and, if an additional address is located, to send the materials to the updated address.

        E.    <u>Tax Treatment of Payments to Participating FLSA Class Members.</u>  For individual settlement allocations as set forth in Paragraph 2(A)-2(B) above, fifty percent (50%) of the amount(s) paid to each Participating FLSA Class Member under this Agreement shall be reported by the Administrator as wages to the appropriate taxing authorities on a Form W-2 issued to the Participating FLSA Class Member with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law. The remaining fifty percent (50%) of the amount(s) paid to each Participating FLSA Class Member will be allocated to liquidated damages, interest, and/or penalties, and reported by the Settlement Administrator as non-wage income to the appropriate taxing authorities on a Form 1099 issued to the Participating FLSA Class Member. The service payment will be treated as non-wage income and reported by the Administrator to the appropriate taxing authorities on a Form 1099 issued to Plaintiff.  The Settlement Administrator will be responsible for issuing the

appropriate W-2 and 1099 forms. Each Participating FLSA Class Member shall be responsible for any taxes associated with the Form 1099 payment.

8. **Cooperation Clause.** The Parties agree to cooperate in good faith to effectuate the Settlement of the Action, including securing the Court's approval of the Agreement/dismissal of the Action, assisting with the administration of the Settlement in accordance with the terms of this Agreement, and obtaining a final judgment.

9. **Court Retains Jurisdiction to Enforce Agreement.** The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

10. **Entire Agreement.** This Agreement embodies the entire agreement between the Parties which controls over any prior communications regarding the Settlement. In entering into the Settlement, no Party has relied on any representations not explicitly contained in this Agreement.

11. **Successors.** The Settlement and this Agreement will inure to the benefit of and be binding upon the Parties' heirs and successors.

12. **No Admissions.** Nothing in this Agreement constitutes an admission or suggestion of liability by any Party. Defendant denies any wrongdoing and continues to assert that, absent this Settlement, they ultimately would prevail in the Action.

13. **Court Approval Not Obtained.** If the Court does not approve the Settlement, the Parties' litigation positions will return to the *status quo ante* and, for example, Defendant will not

have waived, compromised, or impacted any objections or defenses to Plaintiff's claims or the propriety of class-wide litigation.

14. **Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

15. **Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

16. **Evidentiary Privilege.** This Agreement and all associated negotiations are covered by Federal Rule of Evidence 408.

17. **Applicable Law.** This Agreement is governed and construed pursuant to Texas law.

18. **Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approved by the Court.

19. **Execution.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or other electronic means will constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile or other electronic means will be deemed to be their original signatures for any purpose whatsoever.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

DocuSign Envelope ID: 9DBF913A-D210-4B9F-97A3-C8C07D5C9037

_____  
Plaintiff

7/7/2017  
Date

_____  
For Defendant

7/7/17  
Date

Reviewed and approved as to form by counsel:

Rowdy Meeks Legal Group LLC

Date: 7/7/2017

By: _Rowdy Meeks_____  
Printed Name: Rowdy B. Meeks  
Attorneys for Plaintiff and Participating FLSA Class Members

Date: 7/7/2017

By: _____  
Printed Name: Carrie B. Hoffman  
Attorneys for Defendant

13

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER MEALS,** On Behalf of Himself and All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>**KEANE FRAC GP, LLC;**<br>**KEANE FRAC, LP; and**<br>**KEANE GROUP HOLDINGS, LLC,**<br><br>Defendants. | § § § § § § § § § § § § § § | Civil Action No. 2:16-cv-01674-NBF |

TO: [*INSERT CLASS MEMBER NAME*]

## COLLECTIVE ACTION SETTLEMENT NOTICE

**IF YOU RECEIVED THIS NOTICE IN THE MAIL IN AN ENVELOP ADDRESSED TO YOU, YOU ARE COVERED BY THE SETTLEMENT OF THIS COLLECTIVE ACTION LAWSUIT.**

**THE UNITED STATES DISTRICT COURT HAS AUTHORIZED THIS NOTICE, WHICH SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.**

**PLEASE READ THIS DOCUMENT CAREFULLY.**

| 1. | What is the Lawsuit About? |
|---|---|

The United States District Court for the Western District of Pennsylvania ("Court") presides over this Lawsuit, which was filed in November 2016 by Plaintiff Christopher Meals ("Plaintiff") against Defendant Keane Group Holdings, LLC, Keane Frac, LP, and Keane Frac GP, LLP (collectively "Keane"). Keane employed Plaintiff as a Frac Supervisor I. He brings the Lawsuit as a "collective action" on behalf of himself and other Frac Supervisor Is who worked for Keane during the last three years.

This Lawsuit challenges whether Keane properly classified Frac Supervisor Is as exempt, and therefore whether they would be entitled to overtime under federal and/or Pennsylvania law from November 2013 to the present.

Federal and state laws entitle non-exempt workers to extra overtime pay for hours worked over 40 per week. Keane classified you and other Frac Supervisor Is as exempt employees. Keane paid

1

Frac Supervisor Is a guaranteed weekly salary to cover all hours worked. Keane did not pay Frac Supervisor Is overtime for hours worked over 40 in a workweek.

In this Lawsuit, Plaintiff alleges that Keane should have paid you and other Frac Supervisor Is overtime for all hours worked over 40 in a given workweek. Keane disagrees with Plaintiff's claims. Keane asserts that Frac Supervisor Is are not legally entitled to any overtime pay because they fall within the executive overtime exemption under state and federal law.

The Court has not decided whether Plaintiff or Keane will win the Lawsuit due to the settlement of the case.

| 2. | **Why did I get this Notice?** |

The Lawsuit covers the time period between November 4, 2013 and [insert date of approval].

According to Keane's payroll records, you worked for Keane as a Frac Supervisor I during the above period. This makes you a "Class Member" covered by the Lawsuit.

As a Class Member, you have the right to learn about the settlement of the Lawsuit and, if you choose, to participate or not participate in the settlement.

You will automatically be covered by the settlement if you cash your settlement check.

| 3. | **What does the settlement provide?** |

The Parties settled the Lawsuit for a total of $2,100,000.00. The Court approved the settlement on [insert approval date].

Under the settlement, Class Members are eligible to share in payments totaling approximately 70% of the alleged overtime pay sought by Plaintiff in the Lawsuit. The Court has approved attorneys' fees of approximately 33% of the total settlement amount.

Under the settlement, you are entitled to the enclosed settlement check in the amount of **$[*insert Payout Amount*]**. One-half of your settlement payment is considered wages for which ordinary payroll and income taxes have been withheld. The other one-half of your settlement is payment for alleged liquidated damages from which no payroll or income taxes have been withheld. You will *not* pay any additional attorney's fees or expenses out of your individual settlement payment as the Court separately awarded those amounts when the Court approved the settlement.

Your settlement amount was calculated based on Keane's record of your earnings and weeks worked from November 2013 to [insert date of approval]. Based on these records, your total overtime owed was divided by the total overtime owed to the class to get your *pro rata* percentage which determines your individual share of the settlement amount.

| 4. | Why is there a settlement? |

***The settlement is a compromise.*** It allows the parties to avoid the costs and risks of further litigation, and provides money to Class Members without significant delay. In reaching this settlement, Keane has not admitted that it violated any laws.

| 5. | What do I give up by participating in the settlement? |

If you participate in this settlement by cashing your settlement check, you will release all legal claims you may have against Keane or any of its officers, agents, or affiliates seeking unpaid overtime pay for the workweeks for which overtime was calculated under the Settlement Agreement under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.*, or any other state or local statute, regulation, or legal theory arising after November 4, 2013 through [insert date of approval]. In addition, you will waive all such overtime claims for those workweeks arising under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

| 6. | Do I have a lawyer in this case? |

The Court has designated the following law firm to serve as "FLSA Class Counsel" and represent the interests of Plaintiff and the FLSA Class Members: Rowdy Meeks Legal Group, LLC, 8201 Mission Road, Suite 250, Prairie Village, Kansas 66208 (Phone: 913-766-5585; Website: rmlegalgroup.com).

Lawyers from this firm are available to answer your questions in strict confidence. If you call the firm, please identify yourself as a "Class Member" in the "Keane Overtime Lawsuit" and ask to speak with Rowdy Meeks.

| 7. | How do I obtain more information? |

This Notice summarizes the most important aspects of the proposed settlement. You can obtain further information by contacting Rowdy Meeks Legal Group LLC whose contact information is above.

**CONTACT COUNSEL IDENTIFIED IN THIS NOTICE IF YOU HAVE ANY QUESTIONS. DO NOT CONTACT THE COURT.**